WILLIAM E. BUZZELL

*vs.*

ABRAHAM KRASKER

Cumberland.   Opinion, November 17, 1949.

PER CURIAM.

This is an action on the case to recover damages for personal injuries and property damage resulting, as the plaintiff alleges, from an upset of the plaintiff's car caused by the sudden application of brakes when the road was found to be blocked by the parked, unlighted beach wagon of the defendant, and the two vehicles immediately preceding the plaintiff, which were thereby caused to occupy the road to the immediate left and right of the parked, unlighted beach wagon.   Exception was taken to the direction of a verdict for the defendant.

The evidence and the reasonable inferences to be drawn therefrom disclose the following situation.

The automobiles involved in the accident were proceeding at night southerly on the south-bound traffic lane of the Maine Turnpike.   The lane has a tarred surface about twenty-four feet in width, with a raised embankment or grass plot, separating the south- and north-bound traffic lanes, on the east, and with a gravelled shoulder six or eight feet in width on the west.   The Turnpike at the scene of the accident is level and straight for a mile northerly.

The defendant, operating a beach wagon seventeen feet in length, struck a deer and brought his car to a stop, headed westerly and across the tarred surface.

The witnesses Craig, Carson and the plaintiff, engaged in delivery of used cars at a market in Massachusetts, left Portland together and were proceeding in line, each operating a car to which was attached a second car by means of a three-foot towbar. Their speed was variously stated to be between forty-five and fifty miles per hour. The space between the units of two cars was approximately one hundred feet.

The leader, Craig, first saw the beach wagon one hundred to one hundred and fifty feet distant. He applied his brakes, reduced his speed, turned left, and with the towed car swaying and striking the edge of the grass plot, passed to the rear of the beach wagon.

Carson, second in line, travelling one hundred feet behind Craig, saw the towed car sway and turn left. On seeing the beach wagon sixty feet distant, he turned sharply to the right, and passed in front of the beach wagon.

The plaintiff, third in line, travelling one hundred feet behind Carson, first saw the defendant's car sixty to one hundred feet distant. He tells how the accident happened.

> "A. Well, I was following Mr. Craig and Mr. Carson, and Mr. Craig took a sharp left and Mr. Carson took a right; and I come onto a beach wagon parked crossways of the road which, as I see it, whole road was blocked when I see it; and my first thought was to try to stop so I shoved the brakes on hard to stop and rolled over."

> - - - - - -

> "Q. Now, did you see the brake lights of either the car that Mr. Craig was driving or Mr. Carson was driving go on before the accident?

> "A. No. I wouldn't be able to see the brake lights because they are on the forward car.

> "Q. On the forward car?

> "A. That's right.

"Q. What lights were running?

"A. Just his running lights. Tail lights were on on each car he was towbarring."

- - - - - -

"Q. How fast do you say you were going?

"A. Between 45 and 50 miles an hour.

"Q. As you were going along you saw one ahead of you turn to the right and one turn to the left?

"A. That's right.

"Q. You put your brakes on, tipped your car over?

"A. Tipped both cars over.

"Q. How do you account for it?

"A. How do I account for it? Well, I had to stop and avoid hitting the beach wagon.

"Q. How do you account for your car tipping over?

"A. I had to stop so sudden to keep from hitting the beach wagon, that's why I rolled over. Back car jackknifed and turned me over."

- - - - - -

The evidence and the inferences reasonably to be drawn therefrom, taken most favorably for the plaintiff, clearly and sharply disclose that plaintiff's own negligence contributed to the accident, if indeed it was not the sole cause.

Plaintiff was driving at night at a high rate of speed in a line, with only a short distance between cars. He was aware that no warning of lessening speed could reach him from the brake lights of the cars in line ahead. He knew, or should have known, that in the event of a sudden stop there was present a risk of damage from the "jackknifing" of his towed car. Of greatest importance he either did not, or, it is more likely, could not see the road ahead beyond the rear of Carson's towed car.

As the plaintiff proceeded along the Turnpike, he blindly relied upon the leaders in line to guide his speed and course. In substance, he now complains that he was led by them into a place of danger. Such reliance, under such conditions, is not due care.

The plaintiff does not come within the description of the ordinarily prudent man under the circumstances.

A verdict for the plaintiff would have been manifestly wrong. *Spang* v. *Cote et al.,* decided by the court October 15, 1949. The presiding justice properly directed a verdict for the defendant.

In view of plaintiff's lack of due care, it is not necessary that we comment upon the asserted negligence of the defendant.

The entry will be

*Exceptions Overruled.*

*Robert A. Wilson,*
*I. Edward Cohen,* for plaintiff.

*William B. Mahoney,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.